THE HEALING PLACE AT NORTH OAKLAND MEDICAL CENTER
v ALLSTATE INSURANCE COMPANY

Docket No. 272960. Submitted May 1, 2007, at Detroit. Decided October
23, 2007, at 9:00 a.m.

The Healing Place at North Oakland Medical Center, The Health
Place, Ltd., New Start, Inc., and Edgar Naylor brought an action
in the Oakland Circuit Court against Allstate Insurance Company,
alleging breach of contract and seeking declaratory relief with
regard to Allstate's obligation to pay first-party, no-fault automo-
bile personal protection insurance benefits for services related to
Naylor's injuries received in a car-bicycle accident. Naylor, who
had substance-abuse problems before the accident, allegedly suf-
fered a brain injury in the accident and received treatment from
the corporate plaintiffs as part of an integrated treatment for
brain injury, psychiatric disorders, and substance abuse. When the
corporate plaintiffs (hereafter the plaintiffs) submitted claims to
Allstate for payment for their services, Allstate denied the claims.
Allstate moved for summary disposition, arguing, in part, that the
plaintiffs were not properly licensed to render the treatment given
and, therefore, the plaintiffs' services were not lawfully rendered
under MCL 500.3157. The court, Rudy J. Nichols, J., noting that
the plaintiffs had the burden to prove that the services were
reasonably necessary for Naylor's care but did not present any
evidence of the nature of the services rendered, ruled that without
such evidence there could be no finding of liability. The court also
determined that the plaintiffs failed to prove that the services were
lawfully rendered and granted Allstate's motion for summary
disposition. The plaintiffs appealed.

The Court of Appeals *held*:

1. The plaintiffs had the burden to prove that the services they
rendered were compensable. Allstate supported its motion with
sufficient evidence and the plaintiffs presented only a paucity of
evidence to rebut Allstate's arguments.

2. The services provided by the plaintiffs were not lawfully
rendered under MCL 500.3157 because the plaintiffs were not
licensed to perform the services rendered. The focus of the statute
is on natural persons or institutions. The language "lawfully

rendering treatment" does not permit an institution providing treatment to avoid licensure on the basis that a natural person providing the treatment at the institution is licensed. Similarly, the fact that an institution is licensed does not permit an unlicensed individual to provide treatment at the institution's facility.

3. The plain language of MCL 500.3157 requires that before compensation for providing reasonable and necessary services can be obtained, the provider of treatment, whether a natural person or an institution, must be licensed in order to be "lawfully rendering treatment." If both the individual and the institution were each required to be licensed and either was not, the lawfully rendered requirement would be unsatisfied. The court correctly granted summary disposition on the basis that the services in question were not lawfully rendered.

Affirmed.

SMOLENSKI, P.J., dissenting, stated that, in support of its motion for summary disposition, Allstate failed to meet its initial burden to produce evidence from which the trial court could determine that New Start and The Healing Place unlawfully provided services to Naylor. Because Allstate failed to meet its burden of production, the plaintiffs were not required to rebut the defendant's evidence, and Allstate was not entitled to summary disposition of the claims by those entities on that basis. The evidence was sufficient to support an inference that The Healing Place at North Oakland Medical Center operated as a psychiatric unit even though it only had a license to operate as a residential substance-abuse program. However, the lack of a license to operate as a psychiatric unit does not render unlawful the services it actually provides. The relevant inquiry in determining whether a particular service was lawfully rendered for purposes of MCL 500.3157 is whether the individual performing the actual service was properly licensed. There is no evidence that the actual services performed by its agents were performed without proper licensure. Allstate was not entitled to summary disposition against The Healing Place at North Oakland Medical Center on this basis. The plaintiffs cannot be faulted for failing to present evidence that the services were actually rendered because Allstate did not challenge whether the services were actually provided. Finally, there is a question of fact concerning whether the services rendered were reasonably necessary to treat the injuries suffered in the automobile accident. The order of summary disposition should be reversed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — WORDS AND
   PHRASES — LAWFULLY RENDERED.

   The section of the no-fault automobile insurance act providing that
   a physician, hospital, clinic, or other person or institution lawfully
   rendering treatment to an injured person may charge a reasonable
   amount does not permit an institution providing treatment to
   avoid licensure on the basis that a natural person providing the
   treatment at the institution is licensed; before compensation for
   providing reasonable and necessary services may be obtained, the
   provider of treatment, whether a natural person or an institution,
   must be licensed in order to be lawfully rendering treatment that
   requires licensure; if both the individual and the institution are
   required to be licensed and either was not, the lawfully rendered
   requirement would be unsatisfied (MCL 500.3157).

*Craig S. Romanzi & Associates, P.C.* (by *Craig S. Romanzi*), for the plaintiffs.

*Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C.* (by *Karen W. Magdich* and *Danielle M. Bozich*), for the defendant.

Before: SMOLENSKI, P.J., and WILDER and ZAHRA, JJ.

WILDER, J. In this dispute concerning first-party, no-fault automobile personal protection insurance benefits, plaintiffs appeal as of right the trial court's grant of summary disposition to defendant Allstate Insurance Company. The key issue is whether the services at issue were "lawfully render[ed]" under MCL 500.3157. We affirm.

I

A

In 1995, plaintiff Edgar Naylor was struck by a car while he was riding a bicycle. At the time, Naylor had automobile insurance through Allstate. As a result of the accident, Naylor allegedly suffered a brain injury or

"closed head injury." In addition to problems allegedly caused by the brain injury, Naylor had a substance abuse problem that predated the accident. After the accident, Naylor received treatment from plaintiffs New Start, Inc., and The Healing Place, Ltd.

In 2004, after serving a prison sentence of several years, Naylor admitted himself to the program offered by New Start, The Healing Place, and The Healing Place at North Oakland Medical Center (THP at NOMC), wherein, in 2004 and 2005, he received various services as part of an integrated treatment for brain injury, psychiatric disorders, and substance abuse. Plaintiffs[1] then submitted claims to Allstate for first-party, no-fault automobile personal protection insurance benefits for those services. Allstate denied the claims.

B

In October 2004, plaintiffs commenced this action for breach of contract and declaratory relief. In June 2006, Allstate moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiffs were not properly licensed to render the treatment they gave, and that the services were therefore not "lawfully render[ed]" under MCL 500.3157. Accordingly, Allstate argued, the services were not compensable as personal protection insurance benefits. Allstate also argued that because Naylor's substance abuse problems predated the accident, they were not related to the accident. Finally, Allstate argued that the fees sought were not reasonable.

In ruling on Allstate's motion, the trial court first noted that plaintiffs had the burden to prove that the services were reasonably necessary for Naylor's care and that they did not present any evidence of the nature

---

[1] Hereinafter, we shall use "plaintiffs" to refer collectively to New Start, The Healing Place, and THP at NOMC.

of the services rendered. Absent such evidence, the trial court concluded, there can be no finding of liability. The trial court also concluded that plaintiffs failed to prove that the services were lawfully rendered. For these reasons, the trial court granted Allstate's motion under MCR 2.116(C)(10).

II

We review rulings on motions for summary dispositions de novo. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). To the extent that this dispute requires us to interpret the parties' insurance contract, the proper interpretation of a contract is a question of law, *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003); *Randolph v Reisig*, 272 Mich App 331, 333; 727 NW2d 388 (2006), that we review de novo, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). To the extent that this dispute requires us to engage in statutory interpretation, the interpretation of a statute is also a question of law that we review de novo. *Newton v Bank West*, 262 Mich App 434, 437; 686 NW2d 491 (2004).

"Summary disposition under either MCR 2.116(C)(8) or (C)(10) presents an issue of law for [the Court's] determination and, thus, [the Court] review[s] a trial court's ruling on a motion for summary disposition de novo." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004) (internal quotation marks and citation omitted). Where the parties rely on documentary evidence, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10). *Krass v Tri-County Security, Inc*, 233 Mich App 661, 665; 593 NW2d 578 (1999).

A motion made under MCR 2.116(C)(10) tests the factual support for a claim, *Dressel v Ameribank*, 468

Mich 557, 561; 664 NW2d 151 (2003), and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, *Miller v Purcell*, 246 Mich App 244, 246; 631 NW2d 760 (2001). When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001). A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue upon which reasonable minds could differ. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

When deciding a motion for summary disposition under this rule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). But such materials "shall only be considered to the extent that [they] would be admissible as evidence . . . ." MCR 2.116(G)(6); *Veenstra v Washtenaw Country Club*, 466 Mich 155, 163; 645 NW2d 643 (2002); *Campbell v Kovich*, 273 Mich App 227, 230; 731 NW2d 112 (2006).

III

A

Under MCL 500.3107(1)(a), personal protection insurance benefits are payable for all "reasonable charges incurred for reasonably necessary products, services

and accommodations for an injured person's care, recovery, or rehabilitation." In addition, MCL 500.3157 provides: "A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the products, services and accommodations rendered." In *Cherry v State Farm Mut Automobile Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992), the Court read § 3107 in conjunction with § 3157, and concluded that "the Legislature intended that only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit."

As established by *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49-50; 457 NW2d 637 (1990), it is plaintiffs' burden to prove that the services provided by New Start, The Healing Place, and THP at NOMC were compensable. In its motion for summary disposition, Allstate argued that the services provided by plaintiffs were not "lawfully render[ed]," MCL 500.3157, and thus not compensable, because New Start, The Healing Place, and THP at NOMC were not licensed to perform the services rendered. Specifically, Allstate argued that THP at NOMC was required to be licensed as a psychiatric hospital unit, that The Healing Place had no license at all, and that New Start provided services that required a license to operate an adult foster-care facility. Allstate also argued that plaintiffs failed to show that the services rendered were reasonable and necessary.

In support of its motion, Allstate presented both documentary evidence and deposition testimony. Allstate's documentary evidence established that THP at NOMC held a license for residential substance abuse

services and was not licensed as a psychiatric unit, that New Start was licensed as an outpatient substance-abuse program and not as an adult foster-care facility, and that a New Start representative sent a letter to Naylor's parole officer intimating, if not representing, that THP at NOMC and New Start held licenses that they did not in fact hold. Allstate also presented the deposition testimony of Dr. Thomas Kane and Roman Frankel establishing that the services rendered were in the nature of psychiatric services and adult foster care (i.e., outside the operating licenses). This evidence was sufficient to meet Allstate's burden as the moving party. Despite their ultimate burden under *Nasser* to prove that the services rendered were compensable, plaintiffs presented only a paucity of evidence to rebut Allstate's arguments.

B

We hold, on the existing record and as a matter of law, that the services provided by plaintiffs were not "lawfully render[ed]," MCL 500.3157, because New Start, The Healing Place, and THP at NOMC were not licensed to perform the services rendered. The relevant inquiry in determining whether a particular service was lawfully rendered for purposes of MCL 500.3157 depends on a construction of the statutory language "lawfully rendering treatment[.]" MCL 500.3157. " 'Well-established principles guide this Court's statutory [or court rule] construction efforts. We begin our analysis by consulting the specific [statutory] language at issue.' " *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 458; 733 NW2d 766 (2006), quoting *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 10; 654 NW2d 610 (2002). "This Court gives effect to the Legislature's intent as expressed in the statute's

terms, giving the words of the statute their plain and ordinary meaning." *McManamon v Redford Charter Twp*, 273 Mich App 131, 135; 730 NW2d 757 (2006), citing *Willett, supra* at 48. "When the language poses no ambiguity, this Court need not look beyond the statute or construe the statute, but need only enforce the statute as written." *McManamon, supra* at 136. "This Court does not interpret a statute in a way that renders any statutory language surplusage . . . ." *Id.*, citing *Pohutski v City of Allen Park,* 465 Mich 675, 684; 641 NW2d 219 (2002).

MCL 500.3157 provides: *"[A] physician, hospital, clinic or other person or institution lawfully rendering treatment* to an injured person . . . may charge a reasonable amount . . . ." (Emphasis added.) The statute focuses on natural persons (such as physicians) *or* institutions. We find no basis in the language of this section to conclude that the phrase "lawfully rendering treatment" permits an institution providing treatment to avoid licensure on the basis that a natural person providing the treatment at the institution is licensed. Similarly, the fact that an institution is licensed would not permit an unlicensed individual to provide treatment at the institution's facility. In our judgment, the plain language of MCL 500.3157 requires that before compensation for providing reasonable and necessary services can be obtained, the provider of treatment, whether a natural person or an institution, must be licensed in order to be "lawfully rendering treatment." If both the individual and the institution were each required to be licensed and either was not, the "lawfully render[ed]" requirement would be unsatisfied.

Another Michigan statute sheds light on the no-fault statute's "lawfully render[ed]" requirement. MCL 450.225 provides a "legally authorized to render" re-

quirement: "A corporation . . . shall not render professional services . . . except through . . . agents who are duly licensed or otherwise legally authorized to render the professional services . . . ." (Emphasis added.) Thus, MCL 450.225 has a requirement similar to the "lawfully render[ed]" requirement of MCL 500.3157 that specifically states or suggests that the agent who renders the service must be licensed in order to satisfy the requirement. In contrast, MCL 500.3157 does not expressly state or suggest that the agent must be licensed in order to satisfy the "lawfully render[ed]" requirement. Rather, MCL 500.3157 focuses on either the agent or the institution "lawfully rendering" treatment. In short, under MCL 500.3157, if both the individual and the institution were each required to be licensed and either was not, the "lawfully render[ed]" requirement would be unsatisfied.

In addition, MCL 550.1105(4), part of the Nonprofit Health Care Corporation Reform Act, defines "health care provider" to include

> a health care facility; *a person licensed,* certified, or registered under parts 161 to 182 of Act No. 368 of the Public Acts of 1978, as amended, being sections 333.16101 to 333.18237 of the Michigan Compiled Laws; any other person or facility, with the approval of the commissioner, who or which meets the standards set by the health care corporation for all contracting providers; and, for purposes of section 414a, any person or facility who or which provides intermediate or outpatient care for substance abuse, as defined in section 414a. [MCL 550.1105(4) (emphasis added).]

In so providing, § 1105(4) clearly provides that an unlicensed provider is not a health care provider. Reasoning by analogy, the no-fault act must be read to provide that if both the individual who provided services and the institution to which the individual be-

longed were each required to be licensed, and either was not, the "lawfully render[ed]" requirement is not met.

C

The dissent relies on *Miller v Allstate Ins Co (On Remand)*, 275 Mich App 649, 657-658; 739 NW2d 675 (2007). We find *Miller* distinguishable, because it considered only whether mere defects in corporate structure would render treatment provided by the incorrectly incorporated entity not "lawfully render[ed]" under MCL 500.3157.

D

Because we find that the trial court correctly granted summary disposition on the basis that the services in question were not "lawfully render[ed]," plaintiffs' remaining issues are moot. *Ewing v Bolden*, 194 Mich App 95, 104; 486 NW2d 96 (1992).

IV

For the foregoing reasons, we affirm the trial court's summary disposition in Allstate's favor.

ZAHRA, J., concurred.

SMOLENSKI, P.J. (*dissenting*). Because I conclude that the trial court erred when it granted summary disposition in favor of defendant, I respectfully dissent.

In the present case, plaintiffs alleged that they were entitled to compensation for services provided to defendant's insured. Under MCL 500.3107(1)(a), personal protection insurance benefits are payable for all "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured

person's care, recovery, or rehabilitation." In addition
to the requirements imposed by MCL 500.3107(1)(a),
MCL 500.3157 provides that

> [a] physician, hospital, clinic or other person or institution
> lawfully rendering treatment to an injured person for an
> accidental bodily injury covered by personal protection
> insurance . . . may charge a reasonable amount for the
> products, services and accommodations rendered.

In *Cherry v State Farm Mut Automobile Ins Co*, 195
Mich App 316, 320; 489 NW2d 788 (1992), the Court
read MCL 500.3107 in conjunction with MCL 500.3157
and concluded that "the Legislature intended that only
treatment lawfully rendered, including being in compli-
ance with licensing requirements, is subject to payment
as a no-fault benefit." Hence, in order for a charge to be
compensable as a no-fault benefit, the charge must be
reasonable, reasonably necessary for an injured per-
son's care, recovery, or rehabilitation, and it must be
lawfully rendered.

In its motion for summary disposition, defendant
argued that The Healing Place at North Oakland Medi-
cal Center (THP at NOMC) was required to be licensed
as a psychiatric hospital unit, that The Healing Place,
Ltd. (The Healing Place), had no license at all, and that
New Start, Inc. (New Start), provided services that
required a license to operate an adult foster-care facil-
ity. Defendant further argued that, because these enti-
ties did not have the requisite licenses, the services
rendered by those entities were unlawful within the
meaning of MCL 500.3157 and, therefore, not compens-
able. The trial court agreed with defendant.

Although plaintiffs bore the ultimate burden to prove
that their charges were compensable under MCL
500.3107, see *Nasser v Auto Club Ins Ass'n*, 435 Mich
33, 49-50; 457 NW2d 637 (1990), because defendant was

the moving party, it had the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); MCR 2.116(G)(3). In order to meet that burden, at a minimum, defendant had to present evidence that the entities at issue provided services to Naylor under circumstances that required those entities to possess a specific type of license and that the entities did not possess the required license.

In its motion for summary disposition, defendant alleged that New Start provided services to Naylor as an adult foster-care facility. Further, defendant alleged that New Start did not have a license to operate an adult foster-care facility. In order to constitute an "adult foster care facility," New Start must provide foster care to adults who are aged, mentally ill, developmentally disabled, or physically disabled in such a way that they require ongoing supervision, but do not require continuous nursing care. MCL 400.703(4). Furthermore, "foster care" is defined as "the provision of supervision, personal care, and protection in addition to room and board, for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks for compensation." MCL 400.704(6).

To support its claim that New Start unlawfully operated an adult foster-care facility, defendant attached a copy of a license for residential substance-abuse treatment issued to THP at NOMC. However, this license alone does not establish that New Start does not possess a license to operate an adult foster-care facility. Defendant also attached a letter from a staff member at New Start to Naylor's parole officer that states that Naylor had been admitted to the inpatient hospital-based program run by The Healing Place, but had since matriculated and was now participating in

the community-based and day treatment programs provided by New Start. While this letter indicates that Naylor was receiving some services from New Start, it does not specify the nature of those services, the location where those services were provided, or the circumstance under which the services were provided. As such, these documents were insufficient to establish that New Start provided services as an adult foster-care facility without a license.

In its reply to plaintiffs' response, defendant also cited and attached the deposition testimony of Dr. Thomas Kane, who was a contract psychiatrist with New Start from 2003 to May 2004. Kane testified that, to his knowledge, New Start supervised the treatment of a person named Barbara Clark and also stated that he *assumed* that New Start provided hygiene, grooming, maintenance, and medication services to all its patients. Defendant did not explain how Barbara Clark's treatment was relevant to this case and failed to explain how Kane's assumptions about the services provided during the period of his contractual relationship with New Start established the nature of the services provided by New Start after Kane terminated his relationship with New Start. Finally, defendant cited the testimony of Roman Frankel, who apparently is an owner of at least one of the entities at issue.[1] According to defendant, Frankel testified that New Start's staff was on call 24 hours a day. However, the attached pages of the deposition contain no such testimony.[2]

---

[1] The relationship between New Start, The Healing Place, and THP at NOMC and the programs that they operated is not described in the record or the parties' briefs.

[2] In the portion of Frankel's testimony attached to defendant's motion for summary disposition, Frankel stated that New Start was the administrative arm of The Healing Place, but did provide some patient services. However, there is no testimony that explains specifically what those services were.

Defendant also failed to provide any evidence concerning the services provided by The Healing Place and how the provision of those services was unlawful. Although defendant attached the letter from New Start that indicated that Naylor had been admitted to a hospital-based inpatient program run by The Healing Place, the letter is by itself inadequate to establish the nature and circumstances under which the services were provided and whether those services were provided without a license. In a footnote in its reply brief, defendant does argue that The Healing Place is interchangeable with New Start and may be the entity that runs the apartment-based program, but failed to attach any evidence in support of that assertion.[3]

On the basis of the evidence presented by defendant in support of its motion for summary disposition, I conclude that defendant failed to meet its initial burden to produce evidence from which the trial court could determine that New Start and The Healing Place unlawfully provided services to Naylor. *Quinto, supra* at 362. Because defendant failed to meet its initial burden of production, plaintiffs were not required to rebut defendant's evidence and defendant was not entitled to summary disposition of the claims by those entities on that basis.

Defendant also claimed that THP at NOMC provided services to Naylor as a psychiatric unit without having

---

[3] Plaintiffs presented the affidavit of Julius Ballew, who was employed by the Department of Social Services as a consultant on adult foster-care licensing. In his affidavit, Ballew stated that he was familiar with community-based apartments used for the rehabilitation of individuals with brain injuries and concluded that The Healing Place was a community-based apartment program. However, even if defendant could rely on this affidavit to satisfy its initial burden of production, this averment alone would not be enough to establish that the apartment facility provided services that required it to be licensed as an adult foster-care facility.

a license to operate as a psychiatric unit. In order to establish this, defendant needed to present evidence that THP at NOMC operated as a "unit of a general hospital that provides inpatient services for individuals with serious mental illness or serious emotional disturbance." MCL 330.1100c(9). In support of this claim, defendant presented evidence that Naylor had a serious mental illness and was admitted to The Healing Place's inpatient, hospital-based program. In addition, defendant attached invoices, which clearly indicate that Naylor was a resident patient of the facility and received some psychiatric services while admitted to the program. Frankel also testified that The Healing Place provided various levels of care and that the "hospital" charged a per diem rate that included neuropsychological and neuropsychiatric assessments, nursing care, room and board, transportation services, and some group therapies. Further, Frankel stated that the facility was licensed as a residential substance-abuse program. This evidence was sufficient to support an inference that THP at NOMC operated as a psychiatric unit even though it only had a license to operate as a residential substance-abuse program. Nevertheless, even assuming that THP at NOMC was operating as a psychiatric unit without the requisite license, this fact does not necessarily entitle defendant to summary disposition of THP at NOMC's claims.

In *Miller v Allstate Ins Co (On Remand)*, 275 Mich App 649; 739 NW2d 675 (2007), the Court examined whether a defect in the corporate form of an entity that provided services to an injured person insured by Allstate rendered the provision of services unlawful within the meaning of MCL 500.3157. In holding that the defect did not render the services unlawful, the Court reasoned:

While the language of MCL 500.3157 speaks of a clinic or institution lawfully rendering treatment, treatment is invariably and necessarily performed or rendered by employees and personnel; the *treatment itself* has nothing to do with corporate formation issues. Moreover, the inclusion of "physician, hospital, clinic or other person or institution" in the statutory language is chiefly for purposes of identifying those entities and persons that "may charge a reasonable amount for the products, services and accommodations rendered." MCL 500.3157. While Allstate argues that the Legislature included entities (hospitals, clinics, and institutions) in the statute because the entities need to be lawfully rendering treatment independent from any consideration of whether individual employees or agents who actually treat patients are doing so, we read the inclusion of the entities in the statutory language as merely indicating that those entities can be paid by insurers for services provided at their institutions. Of course, each of these entities must be lawfully rendering treatment, but, again, the treatment is rendered through their personnel. Furthermore, the Legislature's focus on the lawfulness of rendering treatment as opposed to the lawfulness of an entity's corporate structure indicates the Legislature's desire not to burden individuals seeking medical treatment, ostensibly covered by insurance, from having to engage in an extensive and in-depth review and analysis regarding an entity's formation and related incorporation issues. The goal of the no-fault act was to provide accident victims with adequate, assured, and prompt reparation for their losses. *Nelson v Transamerica Ins Services*, 441 Mich 508, 514; 495 NW2d 370 (1992). This goal would be defeated by interpreting MCL 500.3157 as advocated by Allstate. [*Miller, supra* at 657-658 (emphasis in original).]

Although the holding in *Miller* applied to defects in corporate structure, I conclude that the reasoning applies equally to issues involving the licensing of entities.

The stated purpose behind establishing licensing requirement for psychiatric units is to ensure that the units "provide the facilities and the ancillary support-

ing services necessary to maintain a high quality of patient care." MCL 330.1134(1). Hence, the focus of the license for a psychiatric unit is not on the individual provision of a particular service, but rather on broader issues that may affect the provision of the services. Entities such as THP at NOMC can only provide services through their agents. Thus, whether a particular service is being properly provided will more directly depend on the skill and training of the agent acting on behalf of the entity. Further, the fact that an entity has a psychiatric-unit license does not relieve the individual agents of their obligation to have the requisite license to perform the actual services rendered. For these reasons, I conclude that the lack of a license to operate as a psychiatric unit does not necessarily render the services actually provided by THP at NOMC unlawful. Instead, as in *Miller*, *supra*, I would hold that the relevant inquiry in determining whether a particular service was lawfully rendered for purposes of MCL 500.3157 depends on whether the individual performing the actual service is properly licensed. Because there is no evidence that the actual services performed by the agents of THP at NOMC were performed without proper licensing, I conclude that defendant was not entitled to summary disposition on this basis.

I also disagree with defendant's argument that summary disposition was appropriate because plaintiffs failed to present evidence that the entities actually rendered compensable services. Defendant apparently conceded that each of the entities provided some services to Naylor. Indeed, defendant only argued that the services were (1) not related to the injuries caused by the accident, (2) not lawfully rendered, and (3) not reasonable. Because defendant did not challenge whether the services were actually provided to Naylor, plaintiffs cannot be faulted for failing to present evi-

dence that the services were rendered. Therefore, to the extent that the trial court determined that summary disposition was appropriate because plaintiffs failed to present evidence of the services provided, I would conclude that it erred.

Defendant also argued that summary disposition was appropriate because plaintiffs only treated Naylor for conditions that predated the injuries from the car accident. In support of this argument, defendant attached records that indicate that Naylor had suffered a closed head injury as a child and had a substance-abuse problem before the accident in question. However, the medical records also indicate that Naylor had decreased impulse control after the automobile accident that may have exacerbated his substance-abuse problem. In addition, the records indicate that the closed head injury he suffered in the accident may have increased his mental deficits. Hence, there is a question of fact regarding whether the services provided were reasonably necessary to treat Naylor for the injuries he suffered during the car accident as required by MCL 500.3107(1)(a).

Finally, defendant argued that plaintiffs' fees were unreasonable. Although the trial court did not address this issue, on review de novo, I would conclude that this argument is unavailing. Defendant failed to present any evidence concerning the reasonableness of the fees plaintiffs charged for the services provided to Naylor. Instead, defendant merely argued that plaintiffs would have to prove that their fees were reasonable and noted that plaintiffs had not presented any evidence that the fees were reasonable. However, as noted above, defendant has the initial burden to provide evidence from which the trial court could conclude that the fees were unreasonable. See *Quinto, supra* at 362. Absent the

presentation of such evidence, defendant is not entitled to summary disposition on the issue of reasonableness. See MCR 2.116(G)(4). Furthermore, although defendant would not be liable for any medical expense to the extent that the expense was unreasonable, see *Nasser*, *supra* at 49, defendant would still be liable for the reasonable cost of the necessary services provided to Naylor. Therefore, this would not warrant outright dismissal of plaintiffs' claims.

For these reasons, I conclude that the trial court erred when it determined that defendant was entitled to summary disposition in its favor. Therefore, I would reverse and remand this case for further proceedings.