# STATE OF MICHIGAN

# COURT OF APPEALS

KEYS OF LIFE,

        Plaintiff-Appellee,

and

KEITH MOWRER JR, as Next Friend of KEITH
MOWRER SR,

        Intervening Plaintiff-Appellee,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
December 27, 2016

No. 328227
Wayne Circuit Court
LC No. 13-015439-NF

Before: WILDER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals by leave granted the trial court's order granting in part and denying in part its motion for summary disposition in this first party action for personal protection insurance (PIP) benefits brought by the provider of the benefits. We reverse that portion of the trial court's opinion finding that plaintiff did not unlawfully render treatment and affirm in all other respects.

Keith Mowrer, Sr. was seriously injured in an automobile accident in July 2010. Defendant is Mowrer's no-fault insurer. Beginning in 2012, plaintiff provided services to Mowrer in a licensed group home, and then later leased an apartment to Mowrer as part of its Residential Apartment program. Plaintiff does not have a license to operate the apartment as an adult foster care facility. Plaintiff initiated this action against defendant alleging that defendant violated the Michigan no-fault insurance act, MCL 500.3101, *et seq.* when it unreasonably refused to pay or delayed making payments for supervisory, attendant care, and household services plaintiff provided to Mowrer. Plaintiff also sought a declaration by the trial court concerning application of the no-fault act to its claims and the amount defendant should be obligated to pay. Mowrer, through his next friend, intervened in the action and filed a complaint against defendant raising the same allegations as plaintiff.

-1-

Defendant did not dispute that Mowrer required 24-hour attendant care. However, defendant moved for summary disposition under MCR 2.116(C)(10), contending that plaintiff was not entitled to reimbursement under the no-fault act because it was acting as an unlicensed adult care facility and was thus not lawfully rendering "treatment" under MCL 500.3157 of the no-fault act. Defendant further alleged that plaintiff failed to submit reasonable proof for certain of its claims, that certain charges sought to be reimbursed by plaintiff, specifically ordinary living expenses, are not reimbursable under the no-fault act, and that plaintiff made fraudulent statements concerning hours of services provided, what services were rendered, and the amount outstanding, such that plaintiff was barred from recovery under the fraud provision contained in defendant's insurance policy. The trial court granted defendant's motion to the extent that plaintiff was seeking reimbursement for basic room, board and utility costs, ruling that the provision of such ordinary living expenses were not compensable under the no-fault act, but denied defendant's motion in all other respects. The trial court specifically found that plaintiff did not unlawfully render treatment or commit fraud, but that to the extent that expenses pertaining to plaintiff's "Residential Apartment Program" are reimbursable under the no-fault act, the expenses are to be submitted to the factfinder. We granted leave to appeal that order.

We review de novo the trial court's decision on a motion for summary disposition. *Oliver v Smith*, 269 Mich App 560, 563; 715 NW2d 314 (2006). In ruling on a motion for summary disposition under MCR 2.116(C)(10), a court "must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010). Summary disposition is appropriate under MCR 2.116(C)(10) when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." This Court also reviews de novo questions of statutory interpretation. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

On appeal, defendant first contends that the trial court erred in holding that plaintiff did not unlawfully render treatment to Mowrer and in denying defendant's motion for summary disposition premised on MCL 500.3157. We agree.

Defendant, as plaintiff's no fault insurer, is the primary insurer for expenses incurred for services provided by plaintiff to Mowrer related to injuries suffered from the accident on July 31, 2010, and that are reimbursable under the no-fault act. A stipulation and order recognizing the same was entered by the trial court during the course of these proceedings. PIP benefits are payable under the no-fault act as set forth in MCL 500.3107. MCL 500.3157 additionally provides as follows:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

In *Healing Place at N Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 59; 744 NW2d 174 (2007) this Court held that, "the plain language of MCL 500.3157 requires that before compensation for providing reasonable and necessary services can be obtained, the provider of treatment, whether a natural person or an institution, must be licensed in order to be 'lawfully rendering treatment.' If both the individual and the institution were each required to be licensed and either was not, the 'lawfully render[ed]' requirement would be unsatisfied." As pointed out in *Psychosocial Serv Assoc, PC v State Farm Mut Auto Ins Co*, 279 Mich App 334, 338; 761 NW2d 716 (2008), however, "services might be lawfully rendered even if a particular service is 'excluded' from the scope of the provider's licensed field: The purpose of the licensing statute is not to prohibit the doing of those acts that are excluded from the definition of [the field of practice], but to make it unlawful to do without a license those things that are within the definition" (internal quotation marks omitted). In short, treatment is not lawfully rendered if the performance of that treatment requires a license and the provider acts without that license.

Here, defendant contends that plaintiff provided unlicensed adult foster care at Mowrer's apartment. According to defendant, because an adult foster care facility must be licensed, plaintiff's unlicensed status means that it was not lawfully rendering treatment under the no-fault act and its services are thus not compensable. In support of its position, defendant cites to *Healing Place*, 277 Mich App 51. The *Healing Place* Court held that where an unlicensed facility provided adult foster-care services, that facility did not lawfully render treatment under MCL 500.3157, and therefore its services were not compensable. *Healing Place*, 277 Mich App at 57-58. Notably, in reaching that conclusion, the *Healing Place* Court first determined that the defendant-insurer had established that the facility at issue provided adult foster care. *Id*. This is significant, for adult foster care services cannot be provided without a license. MCL 400.713(1). As in *Healing Place*, the defendant-insurer in this case has likewise established that plaintiff provided adult foster care to Mowrer.

Adult foster care is governed by the Adult Foster Care Facility Licensing Act (AFCFLA), MCL 400.701 *et seq*. An adult foster care facility is an establishment that provides foster care to adults. MCL 400.703(4). The AFCFLA explicitly defines "foster care" as "the provision of supervision, personal care, and protection in addition to room and board, for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks for compensation." MCL 400.704(7). As used in this act, "Supervision" is defined as:

> guidance of a resident in the activities of daily living, including all of the following:
>
> (a) Reminding a resident to maintain his or her medication schedule, as directed by the resident's physician.
>
> (b) Reminding a resident of important activities to be carried out.
>
> (c) Assisting a resident in keeping appointments.
>
> (d) Being aware of a resident's general whereabouts even though the resident may travel independently about the community. [MCL 400.707(7)]

"Personal care" means "personal assistance provided by a licensee or an agent or employee of a licensee to a resident who requires assistance with dressing, personal hygiene, grooming, maintenance of a medication schedule as directed and supervised by the resident's physician, or the development of those personal and social skills required to live in the least restrictive environment." MCL 400.706(1). "Protection", is defined as:

> the continual responsibility of the licensee to take reasonable action to insure the health, safety, and well-being of a resident, including protection from physical harm, humiliation, intimidation, and social, moral, financial, and personal exploitation while on the premises, while under the supervision of the licensee or an agent or employee of the licensee, or when the resident's assessment plan states that the resident needs continuous supervision. [MCL400.706(4)]

As set forth in MCL 400.713(1), "[a] person, partnership, corporation, association, or a department or agency of the state, county, city, or other political subdivision shall not establish or maintain an adult foster care facility unless licensed by the department." Thus, if a facility meets the definition of an adult foster care facility, it must be licensed as such by the State of Michigan.

In support of its contention that the apartment in which Mowrer was provided with by plaintiff was an unlicensed foster care facility, defendant points out that plaintiff itself stated that it provided 24-hour care to Mowrer. Plaintiff also stated in answers to interrogatories that Mowrer's mental function is at the level of a young child and that he is unable to work or care for himself independently. In addition, LaShawn Davis, owner of plaintiff, testified that plaintiff bills for one-on-one attendant care and the apartment program, which includes: monthly apartment rent; community reintegration, such as taking its patients out into the community for socializing and out to restaurants; transportation; all grocery and food needs for its patients; entertainment, and; some supervision. Plaintiff also provides life coaching for patients and pays for traveling expenses when a patient wants to visit family. With respect specifically to Mowrer, Ms. Davis testified that services that have been billed for him (besides the group home where he formerly resided) have been 24-hour one-on-one attendant care, as he cannot be in a room by himself, two-to-one care when he's being transported anywhere, and two-to-one care in the mornings when he is getting dressed and showering due to behavior issues and because his gait is "off." Ms. Davis further testified that an attendant makes all of Mowrer's meals because he is unable to cook for himself and that he is also unable to do laundry or clean. Ms. Davis testified that Mowrer also receives life skills classes and group support. According to Ms. Davis, a staff member attends therapy with Mowrer to take him to the bathroom at regular intervals, among other things.

All of the above evidences that plaintiff did, in fact, provide adult foster care services to Mowrer in the residential apartment under the statutory definition set forth in MCL 400.704(7). As such its apartment facility must have been licensed under MCL 400.713(1) and it undisputedly was not.

Plaintiff counters that licensing is irrelevant, as it does not provide "treatment", such that MCL 500.3157 is inapplicable. Plaintiff relies upon a dictionary definition of "treatment" and contends that it did not apply medicines or therapy in treating Mowrer's injuries but merely

-4-

provided *services* which amounted to "24 hour supervision to make sure Mr. Mowrer does not harm himself or others." Notably, the very definition of "foster care" includes providing of "supervision . . . for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks . . . ." MCL 400.704(7). Thus, plaintiff appears to concede that it provides adult foster care services and that it did so without the requisite license.

Moreover, contrary to plaintiff's contention, the *Healing Place* Court did not simply determine that the facility at issue was administering remedies to treat the injured person's injuries. The plaintiff in *Healing Place* admitted himself into a program offered by New Start, The Healing Place, and the Healing Place at North Oakland Medical Center, where he received "various services as part of an integrated treatment for brain injury, psychiatric disorders, and substance abuse." *Id*. at 54. The defendant insurer argued that the Healing Place at North Oakland Medical Center was required to be licensed as a psychiatric hospital unit, and that New Start provided services that required a license to operate an adult foster-care facility. *Id*. at 57. The defendant insurer provided documentary evidence showing that The Healing Place at North Oakland Medical Center held a license for residential substance abuse services and that New Start was licensed as an outpatient substance-abuse program and provided deposition testimony establishing that The Healing Place at North Oakland Medical Center provided services in the nature of psychiatric services, and New Start provided services requiring a license to operate as an adult foster care facility. *Id*. at 57-58. The Court ultimately held, as a matter of law, that the services provided by both were not lawfully rendered under MCL 500.3137 because the plaintiffs were not licensed to perform the services rendered. The *Healing Place* Court's holding that unlicensed adult foster care services were not compensable under MCL 500.3157 necessarily required a conclusion that adult foster care services constitute treatment under that section. We are bound by that conclusion. MCR 7.215(J)(1). See also, *Another Step Forward v State Farm Mut Auto Ins Co*, 367 Fed Appx 648, 650 (CA 6 2010)(stating, with regards to 24-hour attendant care to help one carry out the basic necessities of everyday life, "This type of treatment falls squarely into the statutory definition of foster care.")[1]

While plaintiff cites *City of Livonia v Dep't of Social Servs*, 423 Mich 466, 522-523; 378 NW2d 402 (1985), for the proposition that adult foster care services do not constitute treatment, that case relied on the definition of treatment formerly contained in the mental health code, MCL 330.1001 *et seq*. Such reliance was natural, given that the issue concerned psychological issues and mental health treatment. In contrast, *Healing Place* expressly determined that the unlicensed provision of adult foster care services was not compensable under MCL 500.3157. This is exactly the case here. Thus, the trial court's finding that plaintiff did not unlawfully render treatment was in error.

Plaintiff is correct that even if they cannot recover for adult foster care services, they may be entitled to recover for other services lawfully rendered. It is entitled to recover no-fault insurance benefits if the services they provided were reasonably necessary for Mowrer's care,

---

[1] Federal opinions pertaining to state law matters are not binding, but may provide guidance. See, e.g., *Meagher v Wayne State Univ*, 222 Mich App 700, 710; 565 NW2d 401 (1997).

recovery, or rehabilitation, as set forth in MCL 500.3107 and if the services were within the scope of any required license or did not require a license. Plaintiff asserts that attendant care services that do not fall within the definition of adult foster care are compensable. It is plaintiff's burden to prove that the services it provided are compensable. *Healing Place*, 277 Mich App at 57. And, that is what the trial court essentially held. In ruling on defendant's motion, the trial court stated that because plaintiff charged essentially one price for a multitude of services that were included in the one charge for the residential apartment program, plaintiff would have to break down the charges and would have an opportunity to demonstrate that the specific items charged for were compensable. In its order, the trial court stated that "to the extent Plaintiff Keys of Life's billing for 'Residential Apartment Program' consists of expenses reimbursable pursuant to the Michigan No Fault [Act], those expenses must be presented to the trier of fact for their consideration." That portion of the trial court's order is correct.

Defendant next contends that the trial court erred in its determination that plaintiff's claim was not barred by fraud. We disagree.

Insurance policies are subject to the same contract construction principles that apply to any other contract. *Rory v Contl Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). Thus, we construe and apply unambiguous insurance contract provisions as written. *Id*. In addition, as with other contracts, common-law defenses such as duress, waiver, estoppel, and fraud may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute. *Titan Ins Co v Hyten*, 491 Mich 547, 554–55; 817 NW2d 562 (2012). In order to void an insurance policy based on the insured's misrepresentation of a material fact, the insured must show that

> (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. [*Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014).]

In this case, defendant's policy of insurance contains a fraud exclusion, which states as follows:

> We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any occurrence for which coverage is sought.

Defendant contends that because plaintiff submitted documentation for billings that was fraudulent, it was entitled to invoke the above provision. In support of its provision, defendant directs this Court to plaintiff's answers to interrogatories, in which plaintiff admitted that it did not provide care for Mowrer during times that he visited with his family. Defendant asserts that this answer directly contradicted plaintiff's claim and invoices that it provided 24 hour care to Mowrer from the day he moved into their facility, without break. However, the answer to the interrogatory upon which defendant relies very clearly states that there are some exceptions to Mowrer's 24-hour care. The evidence may conflict, but this is what indicates that a genuine issue of material fact exists as to whether plaintiff engaged in fraud on this issue.

Defendant further submits that plaintiff engaged in fraud by misrepresenting the nature of the care that was provided to Mowrer. Specifically, defendant states that plaintiff's invoices indicate that it provided a "one on one rehabilitation aide 24 hours per day," when the deposition evidence clearly establishes that none of Mowrer's caregivers were skilled or trained to provide rehabilitation. Ms. Davis provided an affidavit averred that the term, rehabilitation, as used in the invoices is a "euphemism not intended to correlate to a higher rate of pay." The affidavit aside, even if we are to view the designation of "rehabilitation aide" to be patently false, there still remains a genuine issue of material fact as to whether plaintiff made this statement with the intent that defendant would act upon it in any way. See, *Bahri*, 308 Mich App at 424-425. Defendant does not dispute, after all, that Mowrer required 24-hour per day care by an aide. Given the existence of genuine issues of material fact, the trial court properly denied defendant's motion for summary disposition premised on fraud.

Defendant lastly argues that the trial court erred in denying summary disposition in its favor when plaintiff and intervening plaintiff did not submit reasonable proof of the services for which they claim reimbursement. We disagree.

MCL 500.3142(2) states that personal protection insurance benefits are payable within 30 days "after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer." According to defendant, plaintiff provided nothing other than invoices and a few other undetailed documents, which does not amount to "reasonable proof" substantiating what services were rendered, by whom, and where. However, as pointed out in *Williams v AAA Michigan*, 250 Mich App 249, 267; 646 NW2d 476 (2002), MCL 500.3142(2) "requires only *reasonable* proof of the amount of loss, not exact proof."

In *Williams*, 250 Mich App at 267, this Court found that a letter and billing statement from a medical provider to an injured person showing the uncoordinated benefits that the injured person was responsible for (and sought from the defendant insurer) constituted reasonable proof of the amount of a loss under MCL 500.3142(2). The defendant insurance company argued that it was not obligated to pay any benefits until it received a further explanation of the services. This Court stated:

> [w]e reject defendant's suggestion that it need not have paid plaintiff any benefits until plaintiff requested the exact amount of money that defendant owed. . . . Once plaintiff armed defendant with the information from [the provider] containing a total amount billed and an amount paid by BCBSM, defendant, if it had desired to challenge or investigate the amount purportedly paid by BCBSM, could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed. Our adoption of defendant's proposed interpretation of MCL § 500.3142(2) would contravene the purpose of the no-fault act to provide accident victims with assured, adequate, and prompt reparations by permitting an insurer to ignore definite but inexact claims. [*Id*. at 267].

Here, defendant does not dispute its awareness of the fact that Mowrer suffered a loss that required 24-hour attendant care. Defendant also acknowledges receiving invoices that reflect plaintiff provided residential care and a 24-hour aide for Mowrer on dates certain. Further Ms. Davis provided deposition testimony regarding the type of care Mowrer required as a result of his accident. Because plaintiff provided *some* proof and defendant does not deny that a loss occurred, summary disposition in favor of defendant was appropriately denied.

We reverse that portion of the trial court's opinion finding that plaintiff did not unlawfully render treatment and affirm in all other respects. We remand to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto