*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAWAD A. SHAH, M.D., PC, doing business as
INSIGHT PAIN MANAGEMENT CENTER

      Plaintiff-Appellant,

v

FREMONT INSURANCE COMPANY,

      Defendant-Appellee.

UNPUBLISHED
April 30, 2019

No. 340441
Genesee Circuit Court
LC No. 15-105466-NF

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

The circuit court summarily dismissed a claim for first-party no-fault benefits, determining as a matter of law that the services provided were "unlawfully render[ed]" by an unlicensed adult foster care facility or nursing home. The service provider, however, rebutted the insurance company's evidence in this regard, warranting trial. We vacate and remand for further proceedings.

## I

Roger Willhelm was seriously injured in an automobile accident. After his hospital release, Willhelm received continuing residential care at Insight Healing Center (IHC), which is owned and operated by plaintiff Jawad A. Shah. Shah sought reimbursement from Willhelm's no-fault insurance provider, defendant Fremont Insurance Company. Fremont denied the payment request and Shah filed suit. The circuit court summarily dismissed the action.

## II

The circuit court supported its grant of summary disposition on various grounds, some of which merit little appellate consideration. First, the court ruled that Shah lacked standing to file suit under *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). Although Shah had secured an assignment from Willhelm, the Fremont policy contained an antiassignment clause, which the circuit court found preclusive. However, such antiassignment clauses were held unenforceable in *Shah v State Farm Mut Auto Ins Co*, 324

Mich App 182; 190 NW2d 148 (2018), oral argument gtd on application 503 Mich 882 (2018), and *Henry Ford Health Sys v Everest Nat'l Ins Co*, ___ Mich App ___; ___ NW2d ___ (Docket No. 341563, issued November 20, 2018), lv pending. As Shah held a valid assignment, his third-party beneficiary claim is moot.

The circuit court also ruled that an order in a separate action brought by Shah and then pending before the court[1] had collateral estoppel effect in the current action. The parties agree, however, that the other action is still pending below, the subject order was not a final order, and collateral estoppel does not apply under the circumstances.

III

This leaves us with the circuit court's final justification for summarily dismissing Shah's action: that IHC was an unlicensed adult foster care facility or nursing home that could not seek recompense for its unlawfully rendered services.

We review de novo a circuit court's grant of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In ruling on the summary disposition motion, the court looked beyond the pleadings to the evidence presented by the parties. Accordingly, we deem the motion granted pursuant to MCR 2.116(C)(10), which "tests the factual sufficiency of the complaint." *Id.* at 120. We must view the evidence presented "in the light most favorable to the party opposing the motion" and determine whether "the proffered evidence fails to establish a genuine issue regarding any material fact," entitling "the moving party . . . to judgment as a matter of law." *Id.* We also review de novo questions of statutory interpretation. *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011). Our primary goal is to ascertain the Legislature's intent by reviewing the plain and unambiguous language of the statute. *Id.* at 246-247.

MCL 500.3107(1)(a) of the no-fault act provides that personal protection insurance (PIP) benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." The circuit court concluded that Shah was precluded from recovering PIP benefits for the services provided to Willhelm because they were not "lawfully render[ed]" as contemplated in MCL 500.3157, which states, in pertinent part:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered.

_____

[1] *Insight Institute of Neurosurgery v Progressive Mich Ins*, Lower Court Docket No. 15-105487-NF.

This Court has held that to be "lawfully render[ed]," the treatment must be " 'in compliance with licensing requirements.' " *The Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 57; 744 NW2d 174 (2007), quoting *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992). In *The Healing Place*, 277 Mich App at 57-58, the entities providing treatment to the insured possessed licenses to operate as substance abuse programs, but sought payment for the insured's accident-related psychiatric and adult foster care services. This Court noted that the plaintiffs bore the "burden to prove that the services . . . were compensable." *Id*. at 57, citing *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49-50; 457 NW2d 637 (1990). Yet, the "plaintiffs presented only a paucity of evidence to rebut" the defendant's evidence that they lacked the proper operating licenses. *The Healing Place*, 277 Mich App at 58. This Court concluded "as a matter of law, that the services provided by plaintiffs were not 'lawfully render[ed],' " reasoning

> The statute focuses on natural persons (such as physicians) or institutions. We find no basis in the language of this section to conclude that the phrase "lawfully rendering treatment" permits an institution providing treatment to avoid licensure on the basis that a natural person providing the treatment at the institution is licensed. Similarly, the fact that an institution is licensed would not permit an unlicensed individual to provide treatment at the institution's facility. In our judgment, the plain language of MCL 500.3157 requires that before compensation for providing reasonable and necessary services can be obtained, the provider of treatment, whether a natural person or an institution, must be licensed in order to be "lawfully rendering treatment." If both the individual and the institution were each required to be licensed and either was not, the "lawfully render[ed]" requirement would be unsatisfied. [*Id.* at 59.]

In this case, Fremont contends that IHC was operating as an unlicensed adult foster care facility or a nursing home. MCL 400.703(4) defines "[a]dult foster care facility" in pertinent part, as an

> establishment that provides foster care to adults. Subject to [MCL 400.726a] adult foster care facility includes facilities and foster care family homes for adults who are aged, mentally ill, developmentally disabled, or physically disabled who require supervision on an ongoing basis but who do not require continuous nursing care.[2]

"Foster care" in turn is defined by MCL 400.704(7)[3] as "the provision of supervision, personal care, and protection in addition to room and board, for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks for compensation." MCL 400.713(1) prohibits the establishment or maintenance of an unlicensed adult foster care facility.

---

[2] MCL 400.703 has been amended by 2018 PA 557, effective March 19, 2019, but the amendment is not relevant to this appeal.

[3] MCL 400.704 was amended by 2017 PA 525, but that amendment also is not relevant here.

MCL 333.20109(1) defines a "[n]ursing home" as

a nursing care facility . . . that provides organized nursing care and medical treatment to 7 or more unrelated individuals suffering or recovering from illness, injury, or infirmity. As used in this subsection, "medical treatment" includes treatment by an employee or independent contractor of the nursing home who is an individual licensed or otherwise authorized to engage in a health profession . . . .

MCL 333.21711(3) mandates licensure to "provide formal or informal nursing care services of the kind normally provided in a nursing home."

It is true that Fremont presented evidence that IHC provided "supervision, personal care, and protection" and "organized nursing care and medical treatment" to Willhelm. MCL 400.707(7) defines "[s]upervision" in adult foster care as

guidance of a resident in the activities of daily living, including all of the following:

(a) Reminding a resident to maintain his or her medication schedule, as directed by the resident's physician.

(b) Reminding a resident of important activities to be carried out.

(c) Assisting a resident in keeping appointments.

(d) Being aware of a resident's general whereabouts even though the resident may travel independently about the community.

MCL 400.706 defines "[p]ersonal care" and "[p]rotection" as follows:

(1) "Personal care" means personal assistance provided by a licensee or an agent or employee of a licensee to a resident who requires assistance with dressing, personal hygiene, grooming, maintenance of a medication schedule as directed and supervised by the resident's physician, or the development of those personal and social skills required to live in the least restrictive environment.

* * *

(5) "Protection", subject to [MCL 400.726a(2)], means the continual responsibility of the licensee to take reasonable action to ensure the health, safety, and well-being of a resident, including protection from physical harm, humiliation, intimidation, and social, moral, financial, and personal exploitation while on the premises, while under the supervision of the licensee or an agent or employee of the licensee, or when the resident's assessment plan states that the resident needs continuous supervision.

Fremont presented the deposition testimony of IHC nursing staff Darci Carpenter and Charlotte Jones that Willhelm received "supervision" while staying at IHC, including assistance with medication and the activities of daily living, as well as assistance with keeping track of his medical appointments. However, viewing the evidence in the light most favorable to Shah, there remain genuine issues of material fact regarding whether IHC was an adult foster care facility that was required to be licensed. Shah and IHC director, Atif Bawahab, testified that Willhelm received around-the-clock nursing care during his IHC stay. Adult foster care facilities do not provide "continuous nursing care." While Carpenter and Jones testified that Willhelm and other patients at IHC did not require or receive around-the-clock care, these conflicts in the evidence must be decided by the trier of fact.

Moreover, Shah presented evidence that shortly before Willhelm resided at IHC, Rebecca Sells of the Michigan Department of Health and Human Services, Bureau of Children and Adult Licensing investigated IHC and concluded that it did not require an adult foster care license because the entity that owned the building where IHC operates did not provide direct care services to residents.[4] Bawahab also submitted an affidavit stating that IHC had never been informed it was operating illegally, and confirmed that all direct care workers were hired through independent contractors. Under these circumstances, there are genuine issues of fact regarding whether IHC was required to hold a license for providing adult foster care services, particularly where the applicable statutes clearly require that the *establishment* where an adult is residing "*provide*[] foster care" in the form of "supervision, personal care, and protection" before licensure is mandated. These issues must be resolved before a judgment can be reached.

Shah similarly overcame the summary disposition burden on Fremont's claim that IHC was an unlicensed nursing home. The only additional evidence presented by Fremont in this regard was that IHC had the capacity to care for up to eight residents, and at times held as many as seven. Fremont emphasized Bawahab's deposition testimony that IHC had not exceeded serving eight patients at a time. The record contains general testimony from Dr. Shah, Carpenter, and Jones that nursing care is provided to residents of IHC. There is also documentary evidence regarding the nursing care provided to Willhelm in the form of answers to interrogatories and nursing notes. However, there are conflicts in the evidence regarding whether the nursing care provided was continuous. Because genuine issues of material fact remain regarding the nature of the nursing care provided at IHC, the circuit court could not

---

[4] Shah faults the circuit court for not giving "respectful consideration" to the recommendations of Sells and her colleague, Christopher Holvey. See *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008) (an administrative agency's interpretation of a statute is to be afforded "respectful consideration" and ought not to be overruled absent "cogent reasons"). However, such "respectful consideration" is only given to "final decisions, findings, rulings and orders of any administrative officer or agency . . . which are judicial or quasi-judicial" in nature. Const 1963, art 6, § 28. The investigator reports in this case were mere recommendations, were not judicial or quasijudicial in nature, and were not "subject to direct review by the courts."

resolve as a matter of law whether IHC was an unlicensed nursing home. We therefore must vacate the circuit court's order granting summary disposition in Fremont's favor.

Shah further contends that pursuant to *Miller v Allstate Ins Co*, 275 Mich App 649, 651, 652; 739 NW2d 675 (2007), aff'd on other grounds 481 Mich 601 (2008), he would be entitled to recovery even if IHC was not properly licensed. In *Miller*, the Supreme Court remanded the case with instructions that this Court consider whether the business that provided physical therapy services to the plaintiff, PT Works, was incorporated in compliance with the Business Corporation Act, MCL 450.1101 *et seq.*, and to also consider whether services to the insured were rendered in compliance with MCL 500.3157. After concluding that PT Works was not properly incorporated, this Court ultimately concluded that the no-fault benefits at issue were rendered in a *lawful* manner. *Miller*, 275 Mich App at 655. Specifically, this Court stated:

> The connection between the rendering of treatment and the manner in which PT Works was incorporated and the nature of the incorporation is too attenuated to make the physical therapy provided to Miller an unlawfully rendered service. PT Works' shareholders did not render physical therapy services to Miller; therefore, their licensing status is not pertinent. [*Id*. at 656.]

Put another way, this Court held that for purposes of MCL 500.3157, corporate formation issues that are irrelevant to the provision of treatment are not dispositive in determining whether the treatment was unlawfully rendered. *Miller*, 275 Mich App at 656-657.

This case is factually distinguishable from *Miller* because it does not involve questions of corporate formation. Rather, the present case is akin to *The Healing Place*, where the dispositive issue is whether the licensing status of IHC should preclude recovery of no-fault benefits.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher