*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KINGS HOME HEALTHCARE, INC., assignee of
DARELL JOHNSON,

Plaintiff-Appellant,

v

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY and ALLSTATE
INSURANCE COMPANY,

Defendants-Appellees.

UNPUBLISHED
December 12, 2019

No. 344808
Oakland Circuit Court
LC No. 2017-162241-NF

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

In this action for recovery of personal protection insurance ("PIP") benefits under the no-fault act, MCL 500.3101 *et seq.*,[1] plaintiff, Kings Home Healthcare, Inc., as assignee of Darell Johnson, appeals the trial court's order granting summary disposition in favor of defendants, Allstate Property & Casualty Insurance Company and Allstate Insurance Company ("defendants"). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Darell Johnson was injured in a motor vehicle accident and subsequently received services from plaintiff in late 2016. According to a letter plaintiff mailed to defendants, plaintiff

---

[1] While this appeal was pending, the No-Fault Act was amended by 2019 PA 21, effective June 11, 2019. "Amendments of statutes are generally presumed to operate prospectively unless the Legislature clearly manifests a contrary intent." *Tobin v Providence Hosp*, 244 Mich App 626, 661; 624 NW2d 548 (2001), citing *Selk v Detroit Plastic Products*, 419 Mich 1, 9; 345 NW2d 184 (1984). Therefore, the applicable provisions of the former no-fault act that were in effect when this case commenced are referenced in this opinion where appropriate.

provided Johnson with "extensive 24[-]hour care," which included meals, medication review, medication administration, personal care, hygiene, assistance with psychiatric care, walking assistance, "Bedbound" assistance, and "Transfer Assistance."

In 2017, Johnson executed an assignment of his right to recover PIP benefits to plaintiff. Plaintiff subsequently filed a complaint against defendants, alleging that it was entitled to payment for the services it had provided to Johnson. Defendants filed a motion for summary disposition, arguing in relevant part that because plaintiff was an unlicensed adult foster care facility, it was ineligible to recover because it had unlawfully rendered its services. Plaintiff did not dispute that it was operating an unlicensed foster care facility in its response to defendants' motion, but instead alleged that defendants lacked standing to challenge its licensure. The trial court ultimately granted defendants' motion for summary disposition, and this appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014). "When evaluating a motion for summary disposition under MCR 2.116(C)(10), 'a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion.' " *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), citing *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). " 'Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.' " *Innovation*, 499 Mich at 507, citing *Maiden*, 461 Mich at 120.

## III. STATUTORY STANDING TO CHALLENGE LICENSURE

Plaintiff claims that the trial court erred when it considered defendants' argument that plaintiff operated an unlicensed adult foster care facility because defendants lacked standing to raise that argument. Plaintiff's contention fails.

Whether a party has standing is a question of law that we review de novo. *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011). Questions of statutory standing require analyzing the statutory language to determine legislative intent. *Miller v Allstate Ins Co*, 481 Mich 601, 608-610; 751 NW2d 463 (2008). "The primary rule of statutory construction is to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, it is generally applied as written." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 482; 673 NW2d 739 (2003).

In *Miller*, 481 Mich at 606-607, our Supreme Court explained:

> Our constitution requires that a plaintiff possess standing before a court can exercise jurisdiction over that plaintiff's claim. This constitutional standing doctrine is longstanding and stems from the separation of powers in our constitution. Because the constitution limits the judiciary to the exercise of

judicial power, Const 1963, art 6, § 1, the Legislature encroaches on the separation of powers when it attempts to grant standing to litigants who do not meet constitutional standing requirements.

Although the Legislature cannot *expand* beyond constitutional limits the class of persons who possess standing, the Legislature may permissibly *limit* the class of persons who may challenge a statutory violation. That is, a party that has constitutional standing may be precluded from enforcing a statutory provision, if the Legislature so provides. This doctrine has been referred to as a requirement that a party possess statutory standing. Statutory standing simply entails statutory interpretation: the question it asks is whether the Legislature has accorded *this* injured plaintiff the right to sue the defendant to redress his injury. [Quotation marks and alteration brackets omitted.]

"Statutory standing, which necessitates an inquiry into whether a statute authorizes a plaintiff to sue at all, must be distinguished from whether a statute permits an individual claim for a particular type of relief." *Id*. at 608. "The principle of statutory standing is jurisdictional; if a party lacks statutory standing, then the court generally lacks jurisdiction to entertain the proceeding or reach the merits." *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 355; 833 NW2d 384 (2013).

Plaintiff relies on our Supreme Court's decision in *Miller* to argue that defendants lacked statutory standing. In *Miller*, William Miller underwent physical therapy at PT Works, Inc., after he was injured in two different motor vehicle accidents. *Id*. at 604. PT Works billed Miller's insurance company but the insurance company refused to pay. *Id*. at 605. Miller assigned his claim to PT Works, which filed a claim against the insurance company. *Id*. The insurance company moved for summary disposition, alleging that it did not have to pay PIP benefits because PT Works was improperly incorporated under the Business Corporations Act ("BCA"), MCL 450.1101 *et seq*. *Id*. at 605. According to the insurance company, PT Works was required to incorporate under the Professional Services Corporations Act, MCL 450.221 *et seq*. *Id*. The trial court denied the insurance company's motion for summary disposition based on a determination that PT Works could incorporate under the BCA. *Id*. Appellate proceedings followed. *Id*. at 605-606.

Ultimately, the matter reached our Supreme Court, which reasoned that the relevant question was whether the BCA granted the insurance company statutory standing to challenge PT Works' corporate status. *Miller*, 481 Mich at 610. The *Miller* Court, *id*., noted that MCL 450.1221 provides the following: "The corporate existence shall begin on the effective date of the articles of incorporation . . . . Filing is conclusive evidence that . . . the corporation has been formed under this act, except in an action or special proceeding by the attorney general."

The *Miller* Court held that the plain language of MCL 450.1221 "create[d] an irrebuttable presumption of proper incorporation once the articles of incorporation have been filed," and that "[t]he statute then creates a single exception to this general rule by granting the Attorney General the sole authority to challenge whether a corporation has been properly incorporated under the BCA." *Miller*, 481 Mich at 611. "In essence, MCL 450.1221 prevents any person—other than the Attorney General—from bringing any challenge to corporate status under the BCA: every

such challenge would be doomed to failure, because the mere filing of articles of incorporation constitutes '*conclusive* evidence' of the corporation's legality." *Id*. at 611-612. Thus, the *Miller* Court held that the insurance company lacked the requisite "statutory standing to assert that PT Works was improperly incorporated[.]" *Id*. at 616. In so holding, the *Miller* Court held that because the insurance company was barred from bringing an original suit against PT Works, then it was "illogical" to permit the insurance company to challenge PT Works' incorporation as an affirmative defense. *Id.* at 610 n 5.

In this case, plaintiff claims that defendants' challenge to plaintiff's lack of licensure as an affirmative defense to payment of PIP benefits is barred because defendants do not have standing to assert this defense. Plaintiff argues that, like the BCA, the provisions governing licensure of facilities like the facility operated by plaintiff are enforced by the Department of Licensing and Regulatory Affairs ("LARA") and therefore plaintiff's lack of licensure is not subject to challenge by defendants. We disagree.

Adult foster care is governed by the Adult Foster Care Facility Licensing Act ("AFCFLA"), MCL 400.701 *et seq*. Regarding licensure, MCL 400.713(1) provides the following: "A person, partnership, corporation, association, or a department or agency of the state, county, city, or other political subdivision shall not establish or maintain an adult foster care facility unless licensed by the department," i.e., LARA. See MCL 400.704(3). Additionally, MCL 400.709(1) provides: "The department shall administer this act and shall require reports, establish procedures, make inspections, and conduct investigations pursuant to law to enforce the requirements of this act and the rules promulgated under this act."

"If [LARA] determines that an unlicensed facility is an adult foster care facility, [LARA] shall notify the owner or operator of the facility that it is required to be licensed under [the AFCFLA]." MCL 400.713(12). If a person does not apply for a license within thirty days of receiving notice from LARA, then the person is subject to a "misdemeanor, punishable by imprisonment for not more than 2 years or a fine of not more than $50,000.00, or both." MCL 400.713(13). The AFCFLA also allows individuals to request an investigation of a facility to determine whether it is operating as an adult foster care facility without a license. See MCL 400.724(1). Finally, "the attorney general, on behalf of [LARA], may seek an injunction against an adult foster care facility" that is "being operated without a license." MCL 400.730(a).

Thus, like the enforcement of corporate status under the BCA, the enforcement of licensing requirements for adult foster care facilities is assigned to a regulatory agency and the Michigan Attorney General. That is where the similarities between the BCA and the AFCFLA end, however. As already stated, MCL 450.1221 of the BCA provides a presumption of legality pertaining to the incorporation of an entity that may only be challenged by the Attorney General. No provision of the AFCFLA provides a similar presumption of legality once certain documents are filed. Although a person may request an investigation of an adult foster care facility and there are certain procedures that LARA must follow once it determines that a facility is improperly operating as an unlicensed adult foster facility, this does not demonstrate that unlicensed adult foster care facilities are entitled to a presumption of legality under the AFCFLA that may only be rebutted by LARA. Rather, unlike the BCA, there is no language within the AFCFLA that prevents entities like defendants from asserting an affirmative defense of improper licensure.

-4-

Moreover, the facts in *Miller* are distinguishable from the facts herein. In *Miller*, it was undisputed that PT Works filed articles of incorporation under the BCA. *Miller*, 481 Mich at 605. Consequently, PT Works was afforded a presumption that it was properly incorporated. *Id.* at 611. Here, even if the AFCFLA afforded a presumption that a person or entity providing adult foster care services was licensed once an application for a license accompanied by the appropriate fee was provided to LARA, that presumption would not apply to plaintiff.[2] There is no evidence before this Court that plaintiff filed an application and paid the appropriate application fee in compliance with the requirements outlined in the AFCFLA. Rather, the record establishes that plaintiff operated its adult foster care facility without attempting to obtain a license. Thus, unlike the plaintiff in *Miller* who filed the appropriate documents and was afforded a presumption of proper incorporation as a result, plaintiff herein would not be entitled to a presumption even if one was afforded by the AFCFLA. Consequently, plaintiff's reliance on *Miller* is misplaced, and we conclude that defendants have statutory standing to challenge whether plaintiff is in violation of the AFCFLA.

## IV. PLAINTIFF'S LICENSURE

Plaintiff argues that the trial court improperly granted summary disposition based on its finding that the undisputed record evidence established that the services provided by plaintiff were not lawfully provided because plaintiff was not properly licensed under the AFCFLA. We disagree.

MCL 500.3157 provides, in pertinent part, the following:

[A] physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered.

Consequently, "[i]f the treatment was not lawfully rendered, it is not a no-fault benefit and payment for it is not reimburseable." *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992).

In *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 53; 744 NW2d 174 (2007), Edward Naylor was struck by a motor vehicle when he was riding his bicycle in 1995. Naylor suffered a brain injury. *Id.* In addition to the brain injury, Naylor also had pre-existing psychiatric disorders and a substance abuse issue. *Id.* at 54. Sometime after the accident, Naylor was sentenced to a term of imprisonment for reasons that are unclear. *Id.* After being released from prison in 2004, Naylor admitted himself to New Start, The Healing Place, and The Healing Place at North Oakland Medical Center, where he received treatment for the

---

[2] MCL 400.713(2) provides that "[a]pplication for a license shall be made on forms provided and in the manner prescribed by [LARA]. The application shall be accompanied by the fee prescribed in [MCL 400.713a.]"

brain injury, his substance abuse issue, and his psychological issues. *Id.* Claims arising from the treatment were submitted to the insurance company, which denied the claims. *Id.* Litigation ensued, and the trial court ultimately granted summary disposition in favor of the insurance company after determining that the treatment was not compensable. *Id.* at 54-55.

On appeal, this Court affirmed the trial court's decision to grant summary disposition in favor of the insurance company. *Healing Place*, 277 Mich App at 61. In doing so, this Court cited *Cherry*, 195 Mich App at 318. In *Cherry*, this Court explained that "the Legislature intended that only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit." *Cherry*, 195 Mich App at 320. The *Healing Place* Court went on to explain that the services provided to Naylor were not "lawfully rendered" because The Healing Place and New Start were not licensed. *Healing Place*, 277 Mich App at 58. This Court explained that "if both the individual and the institution were each required to be licensed and either was not, the 'lawfully render[ed]' requirement [contained in MCL 500.3157] would be unsatisfied." *Id.* at 59. Because the facilities that provided services to Naylor were not properly licensed, this Court held that the trial court properly granted summary disposition in favor of the insurance company. *Id.* at 59-61.

Here, like in *Healing Place*, the issue on appeal is whether plaintiff was properly licensed. As already stated, if a facility meets the definition of an adult foster care facility, it must be licensed by the State of Michigan. See MCL 400.713(1). Under the AFCFLA, " '[a]dult foster care facility' means a home or facility that provides foster care to adults," which "includes facilities and foster care family homes for adults who are aged, mentally ill, developmentally disabled, or physically disabled who require supervision on an ongoing basis but who do not require continuous nursing care." MCL 400.703(4). In pertinent part, "foster care" is defined as "the provision of supervision, personal care, and protection in addition to room and board, for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks for compensation." MCL 400.704(8). The term "supervision," as used in the AFCFLA, is defined as:

> guidance of a resident in the activities of daily living, including 1 or more of the following:
>
> (a) Reminding a resident to maintain his or her medication schedule, as directed by the resident's physician.
>
> (b) Reminding a resident of important activities to be carried out.
>
> (c) Assisting a resident in keeping appointments.
>
> (d) Being aware of a resident's general whereabouts even though the resident may travel independently about the community. [MCL 400.707(7).]

MCL 400.706(1) defines "personal care" as "personal assistance provided by a licensee or an agent or employee of a licensee to a resident who requires assistance with dressing, personal hygiene, grooming, maintenance of a medication schedule as directed and supervised by the resident's physician, or the development of those personal and social skills required to live in the least restrictive environment." Under the AFCFLA, the term "protection" is defined as

> the continual responsibility of the licensee to take reasonable action to ensure the health, safety, and well-being of a resident, including protection from physical harm, humiliation, intimidation, and social, moral, financial, and personal exploitation while on the premises, while under the supervision of the licensee or an agent or employee of the licensee, or when the resident's assessment plan states that the resident needs continuous supervision. [MCL 400.706(5).]

In this case, the undisputed record evidence establishes that plaintiff provided Johnson with "foster care" services as defined in MCL 400.704(8).[3] More specifically, plaintiff admitted that it provided "room," "personal care," "supervision," and "daily meals" to Johnson on a daily basis when he was a client. Plaintiff also admitted that it provided Johnson with "protection" and "24/7 a day" "services" for "two or more consecutive weeks . . . ." As such, plaintiff's facility was required to be licensed under MCL 400.713(1), and it is undisputed that plaintiff's facility was not licensed.

Plaintiff asserts that licensing is irrelevant because it did not provide "treatment" to Johnson as referenced in MCL 500.3157. We disagree.

As already stated, MCL 500.3157 provides, in pertinent part, the following:

> [A] physician, hospital, clinic or other person or institution *lawfully rendering treatment* to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. [Emphasis added.]

Plaintiff relies on the dictionary definition of "treatment" to support its claim that it did not apply medicines, perform surgery, or engage in therapy in treating Johnson's injuries. Rather, plaintiff argues that it merely provided "room, board, attendant care, and case

---

[3] We would reach the same conclusion if we considered plaintiff's untimely response to defendants' request for admissions, which the trial court did not authorize plaintiff to file. We note that the admissions provided definitions for the terms "personal care," "supervision," and "protection" that corresponded with the definitions of those terms provided within the AFCFLA under MCL 400.706(1), MCL 400.707(7), and MCL 400.706(5), respectively.

management services" to Johnson,[4] and that those "services" do not fall within the dictionary definition of "treatment."

Contrary to plaintiff's claim, however, this Court in *Healing Place* ultimately held that the services provided by The Healing Place and New Start were not lawfully rendered under MCL 500.3157 because the plaintiffs were not properly licensed to perform the services rendered, which included services that would require a license to operate as an adult foster care facility. *Healing Place*, 277 Mich at 59-61. The *Healing Place* Court's holding that unlicensed adult foster care services were not compensable under MCL 500.3157 necessarily required the Court to conclude that the services the adult foster care facility provided constituted "treatment" under MCL 500.3157. We are bound by that conclusion. MCR 7.215(J)(1). Consequently, plaintiff's argument that it did not provide "treatment" to Johnson consistent with MCL 500.3157 is without merit. See also *Another Step Forward v State Farm Mut Auto Ins Co*, 367 F Appx 648, 650 (CA 6, 2010) ("The evidence about [the insured's] medical condition indicates that he required attendant care twenty-four hours per day to help him carry out the basic activities of daily life. This type of treatment falls squarely into the statutory definition of foster care.").[5]

Finally, plaintiff claims that it was premature for the trial court to grant summary disposition in favor of defendants because discovery was not yet complete. "Generally, summary disposition is premature if it is granted before discovery on a disputed issue is complete." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). Nevertheless, summary disposition may be appropriate where it is unlikely that further discovery will uncover factual support for the opposing party's position. See *Liparoto Constr Co, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009). Thus, a "party opposing a motion for summary disposition because discovery is not complete must provide some independent evidence that a factual dispute exists." *Caron v Cranbrook Ed Community*, 298 Mich App 629, 645-646; 828 NW2d 99 (2012) (quotation marks and citation omitted). "Mere speculation that additional discovery might produce evidentiary support is not sufficient." *Id*. at 646 (citation omitted).

Plaintiff argues that it would have sought documents and testimony from a LARA representative to determine whether plaintiff required a license under the AFCFLA to further

---

[4] Although plaintiff argues that it provided Johnson with "attendant care" and "case management," plaintiff does so in a cursory manner and does not explain or rationalize how the services that it provided to Johnson fit within the definition of "attendant care" and "case management," as opposed to foster care services as defined in MCL 400.704(8). Furthermore, plaintiff does not cite to the record to support its cursory argument as required under MCR 7.212(7). Consequently, plaintiff has abandoned its argument that it is entitled to compensation for providing Johnson "attendant care" and "case management" services. See *Mitchell v Mitchell*, 296 Mich App 513, 524; 823 NW2d 153 (2012).

[5] Although lower federal court decisions are not binding on state courts, they may be considered persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

"develop the facts at issue." However, plaintiff has failed to provide any independent evidence that a factual dispute exists regarding whether it was an unlicensed adult foster care facility. Instead, plaintiff merely speculates that documents and testimony from LARA representatives would produce evidentiary support for its position. Moreover, we fail to see how plaintiff could uncover factual support for its position given that plaintiff admitted that it operated an unlicensed adult foster care facility. See *Liparoto Constr Co*, 284 Mich App at 33-34. Therefore, plaintiff has failed to demonstrate that the trial court's grant of summary disposition was premature.

In sum, the trial court did not err by granting summary disposition on the basis that the services in question were not lawfully rendered. Because we conclude the trial court correctly granted summary disposition on that basis, defendants' argument that the trial court could have granted summary disposition on an alternative ground is moot. See *Healing Place*, 277 Mich at 60.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro