*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON MEADOWS,

        Plaintiff-Appellant,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellee,

and

KIERRA AMARIS WILLIAMS,

        Defendant.

UNPUBLISHED
January 27, 2025
10:17 AM

No. 368162; 368163
Wayne Circuit Court
LC No. 22-002896-NI

Before: FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Plaintiff was involved in a motor-vehicle accident and sought treatment for his injuries. His insurer, Progressive Marathon Insurance Company ("Progressive"), denied some claims. The trial court, in two orders,[1] partially granted Progressive's motions for summary disposition. We reverse in part and affirm in part.

## I. BACKGROUND

Plaintiff began treatment at First Medical Group (FMG) after a motor-vehicle accident in December 2020. His medical providers prescribed him medications and recommended that he participate in physical therapy and receive chiropractic treatment. When these interventions "only provided minimal relief," plaintiff underwent surgery and obtained steroid injections for his left

---

[1] This Court consolidated plaintiff's two appeals. *Meadows v Progressive Marathon Ins Co*, unpublished orders of the Court of Appeals, entered February 8, 2024 (Docket Nos. 368162 & 368163).

knee. Plaintiff used transportation services for his medical appointments and received household-replacement services. Plaintiff's wife, Christina Meadows, also provided personal caretaking services to plaintiff.

Plaintiff sued defendants in March 2022, alleging that he had incurred "substantial" expenses for reasonable and necessary care. Because the other driver's insurance coverage was insufficient to compensate plaintiff for his injuries, plaintiff sought uninsured and underinsured motorist benefits from Progressive. Plaintiff alleged that Progressive "failed, refused or neglected to pay" him, despite plaintiff submitting reasonable proof of his expenses.

In July 2023, Progressive moved for partial summary disposition under MCR 2.116(C)(10), arguing that plaintiff failed to establish that he required attendant-care services. Progressive further sought dismissal of plaintiff's claim for medical expenses and replacement services because FMG and other businesses managed by Hassan Fayad were involved in a fraud scheme. Progressive supported this argument with deposition testimonies from unrelated cases involving FMG's former employees. These testimonies, while conflicting at times, described a fraudulent scheme in which the businesses provided services according to a predetermined treatment protocol for the purposes of driving litigation and defrauding insurance companies. Rebekah Petty, a physician's assistant, testified, for example, that she completed disability certificates as part of protocol if a patient said he or she could not work or did not have a car.

Progressive also submitted plaintiff's deposition, disability certificates, certificate for attendant care, and an independent-medical examination (IME) report prepared by Dr. Gino Sessa, M.D. The attendant-care certificate, signed by Dr. Paul Lewis, stated that plaintiff needed attendant-care services beginning on December 3, 2021, with no listed end date. The disability certificates, completed throughout 2021, indicated that plaintiff was restricted from housework and driving. Petty signed some of these certificates.

Dr. Sessa opined in his May 2021 report that plaintiff "may have sustained temporary impairment for two or three months as it relate[d] to avoiding any repetitive bending or twisting at the waist, heavy lifting, or prolonged standing," but that no permanent impairment occurred. Further, Dr. Sessa stated that an MRI of plaintiff's left hand showed a "concern for tear of the A1 pulley system in the left index finger," although he would "defer comments regarding the left knee, left hand, and left ankle to a board-certified orthopedic surgeon." Dr. Sessa additionally asserted that plaintiff "would not have required attendant care in relation to injuries" from the accident, although "[r]eplacement services may have been necessary up to three months from the time of the accident." Plaintiff had "been treated with physical therapy, chiropractic care, and anti-inflammatory and muscle relaxants," which was "appropriate treatment related to injuries sustained."

In plaintiff's deposition, he testified that during his visits with FMG, his medical providers took his vital signs, listened to his heart, and took his blood pressure. Plaintiff received ankle and knee braces and a cold compression machine, and he received injections for back pain at an urgent-care facility and hospital in addition to injections from FMG.

In response to defendant's motions, plaintiff provided medical records showing that he suffered a knee injury, for which he underwent an MRI, a steroid injection, and a surgical

procedure. Dr. Lewis authored an affidavit stating that he performed several procedures on plaintiff's left knee in December 2021, that these procedures were not part of any predetermined treatment plan or protocol by Fayad, and that the procedures were reasonable and necessary for plaintiff's care and recovery.

Plaintiff also relied on his and Christina's depositions in which they each asserted that she started performing replacement services and attendant-care services for plaintiff after the accident. Christina prepared attendant-care affidavits documenting services she provided between January 2021 and December 2021.

Because there was no documentation demonstrating that plaintiff's attendant-care services were medically necessary before December 3, 2021, the trial court granted Progressive's motion regarding attendant-care services for services reportedly rendered before that date. The trial court denied Progressive's motion regarding plaintiff's replacement-services claim, but granted Progressive's motion as to plaintiff's medical services provided by Fayad's businesses.

Plaintiff now appeals.

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St. Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Sherman*, 332 Mich App at 632 (cleaned up).

This Court also reviews de novo the interpretation of a statute. *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 494-495; 948 NW2d 452 (2019). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Id*. at 495 (cleaned up). When the statutory language is clear and unambiguous, we presume that the Legislature intended the plain meaning of the statute. *Id*.

## A. MEDICAL EXPENSES

In Docket No. 368162, plaintiff argues that the trial court erred by granting summary disposition to Progressive regarding his claim for medical expenses because there was a genuine question of material fact about whether plaintiff's medical treatment was lawfully rendered and objectively reasonable under MCL 500.3157 and MCL 500.3107.

Personal protection insurance benefits are generally "payable for medical expenses that are lawfully rendered and reasonably necessary for an insured's care, recovery, and rehabilitation." *Measel v Auto Club Group Ins Co*, 314 Mich App 320, 326; 886 NW2d 193 (2016). See MCL 500.3107(1). Medical providers who "lawfully render[] treatment to an injured person for an accidental bodily injury covered by personal protection insurance" or provide rehabilitative occupational therapy for the injury "may charge a reasonable amount for the treatment or training." MCL 500.3157(1).

Challenges by insurers under this section often contend that the provider was not properly licensed to provide treatment. See, e.g., *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 59; 744 NW2d 174 (2007); *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992). Here, Progressive does not claim that any of the medical providers were unlicensed, but, instead, argues that services provided by the Fayad-managed entities were fraudulent and unlawful.

Plaintiff, however, testified that during his visits with FMG, his medical providers took his vital signs, listened to his heart, and took his blood pressure. Plaintiff also received steroid injections, used knee and back braces, and underwent surgery. Progressive failed to produce any evidence showing that plaintiff's providers were not properly licensed to provide these treatments, or that the treatment was otherwise unlawful.

Plaintiff further argues that there was a genuine issue of material fact about whether his treatment was reasonably necessary. In *Krohn v Home-Owners Ins Co*, 490 Mich 145, 159-160; 802 NW2d 281 (2011), our Supreme Court held "that reasonableness is not based merely on the subjective perception that a service is necessary for an injured person's care, recovery, or rehabilitation. Rather, the term 'reasonably' must be determined under an objective perspective." When a plaintiff does not demonstrate that a specific, reasonable expense was incurred for a reasonably necessary product or service, a court may not find that an insurer breached its duty to pay that expense. *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990).

Plaintiff provided sufficient evidence to raise a genuine question of material fact about whether medical treatment was lawfully rendered and objectively reasonable. Plaintiff's medical records, for example, included a hand injury and knee injury. Dr. Lewis unquestionably completed surgical procedures on plaintiff, demonstrating that plaintiff suffered an injury. Although Progressive provided testimony from former employees of Fayad's businesses, Progressive did not submit any testimony establishing that specific treatment provided to plaintiff was unnecessary for his recovery. Further, Progressive contests plaintiff's reliance on Dr. Lewis's affidavit, but courts do not weigh credibility in a motion made under MCR 2.116(C)(10). See *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). Instead, even Dr. Sessa noted that the previously completed treatments were appropriate.

Although there are investigations involving these providers for fraud, which may be information for a jury to consider in this case, on this record, all Progressive has done is raise a question of fact about plaintiff's treatment. In the light most favorable to plaintiff, there is, at minimum, a genuine issue of material fact about whether plaintiff's treatment was lawfully rendered and reasonably necessary for his care and recovery.

## B. ATTENDANT CARE

In Docket No. 368163, plaintiff claims that the trial court erred by dismissing his claim for attendant care services rendered before December 3, 2021 because there remained a question of fact about whether services rendered before that date were reasonably necessary. MCL 500.3107 allows for the recovery of "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

-4-

In *Douglas v Allstate Ins Co*, 492 Mich 241, 265; 821 NW2d 472 (2012),[2] our Supreme Court held that it was not error for the trial court to deny summary disposition when questions of fact existed about whether attendant-care services were reasonably necessary for a time period before they were prescribed. The Court explained that a doctor stated in an affidavit that the plaintiff had needed "care during all waking hours," and the plaintiff's wife had provided that care since the time of the accident. *Id.*

Here, however, plaintiff has provided no objective evidence that the services were reasonable or necessary before December 3, 2021. Plaintiff argues that his medical records and layperson depositions demonstrate that the attendant-care services were reasonably necessary and that they were actually rendered. The attendant care certificate that Dr. Lewis signed stated that attendant-care services were needed beginning on December 3, 2021. The previous disability certificates restricted plaintiff from housework and driving, but not from caring for his personal needs. Although the attendant-care affidavits demonstrated that Christina provided care, Dr. Sessa's report indicated that plaintiff "would not have required attendant care in relation to injuries sustained in" the accident. Plaintiff has failed to demonstrate a genuine question of material fact about whether such services were objectively reasonable or necessary, and the trial court did not err by granting defendant's motion as to services provided before December 3, 2021.

### III. CONCLUSION

For the reasons stated in this opinion, we affirm in part, and reverse and remand in part for further proceedings.

We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

---

[2] Since *Douglas* was decided, the language of MCL 500.3107(1)(a) has been amended, but its meaning remains unchanged.

-5-